IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| ANTOINE NEWKIRK, *et al.*, ) | |
| ) | |
| *Plaintiffs,* ) | Civil No.: 1:23-cv-01218-RDB |
| ) | |
| v. ) | (Removed from Circuit Court for |
| ) | Baltimore City, Maryland |
| HARBOR EAST PARCEL ) | Civil No.: 24-C-22-005370) |
| D-HOTEL, LLC t/a ) | |
| FOUR SEASONS HOTEL BALTIMORE, ) | |
| ) | |
| *Defendant*. ) | |
| _____ ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Defendant, Harbor East Parcel D-Hotel, LLC, t/a Four Seasons Hotel Baltimore (hereinafter "Four Seasons" or "Defendant"), by its undersigned counsel, and pursuant to Rule 12(b)(6), submits the following Memorandum in Support of its Motion to Dismiss Plaintiffs' Amended Complaint, and in support thereof states as follows:

**INTRODUCTION**

In a tacit admission that their original pleading failed to state a claim upon which relief could be granted, Plaintiffs Antoine Newkirk ("Mr. Newkirk") and Tonya Jones ("Ms. Jones") (collectively, "Plaintiffs") chose not to oppose Defendant's Motion to Dismiss and instead filed an Amended Complaint in a second attempt to state a claim for denial of services and public accommodation along with unfair deceptive trade practices. The Amended Complaint, however, does not cure the defects of the original Complaint. The failure to cure the deficiencies in their initial pleading, even with a second attempt, starkly highlights the fact that Plaintiffs are unable to

show that they were denied the opportunity to stay at the Four Seasons on New Year's Eve because of their race, or that Defendant made any improper misrepresentations.

As in their original Complaint, Plaintiffs allege that they walked into the Four Seasons on New Year's Eve and tried to rent a room without having made a reservation. After Mr. Newkirk's debit card was declined on two occasions, Mr. Newkirk attempted to pay in cash. Plaintiffs allege that the Four Seasons attempted to charge them an additional $300 for the cash payment and needed to confirm that the bills were not counterfeit. As was true with the original Complaint, the only support Plaintiffs offer for their claim that these actions constituted race discrimination is their own conclusory allegation that the Defendant was engaging in racial profiling. The Amended Complaint, like the original, does not contain a single piece of direct evidence tying these actions to Plaintiffs' race, nor does it allege that similarly-situated White patrons were given rooms.

Plaintiffs' attempt to bolster the allegations contained in the Amended Complaint fails to change the fact that their claims boil down to nothing more than them being unhappy with the customer service they were receiving. However, as explained more fully below, Plaintiffs cannot obtain any relief because they cannot show that their race was the reason for the Four Seasons' actions, and because they do not allege any misrepresentation by Four Seasons. Accordingly, the Amended Complaint should be dismissed in its entirety with prejudice.

## **PROCEDURAL HISTORY**

On December 31, 2022, Plaintiffs filed this suit against Four Seasons in the Circuit Court for Baltimore City alleging federal claims of denial of services and public accommodation based on race under 42 U.S.C. § 1981 and Title II of the Civil Rights Act of 1962, 42 U.S.C. §2000a ("Title II"), as well as a state claim of engaging in unfair or deceptive practices under the Maryland Consumer Protection Act ("MCPA"). On April 10, 2023, Plaintiffs served Defendant with a

summons. On May 9, 2023, Defendant removed the suit to this Court. On May 16, 2023, Defendant filed a Motion to Dismiss Plaintiffs' original Complaint. On June 6, 2023, rather than oppose the Motion to Dismiss, Plaintiffs filed an Amended Complaint.

## **FACTS ALLEGED IN THE AMENDED COMPLAINT[1]**

On December 31, 2019, at approximately 7 pm, Plaintiffs entered the Four Seasons Hotel in Baltimore without a reservation and inquired about room availability for that night, New Year's Eve. Am. Compl. at ¶ 7. They were assisted by a woman with a name tag reading "Hannah M." Am. Compl. at ¶ 8. Hannah M. quoted Mr. Newkirk a rate of $435.00 for a room, with an estimated total price of $511.13. Am. Compl. at ¶ 9. Mr. Newkirk presented a debit card to Hannah M., and she attempted to obtain authorization for $600.00 on the card. Am. Compl. at ¶ 11. Despite the fact that Mr. Newkirk claims that he had $1,011.52 in his bank account, the card was declined. Am. Compl. at ¶¶ 9, 11. Hannah M. tried again, this time for $630.00, and the card was again declined. Am. Compl. at ¶ 10. Mr. Newkirk claims that Hannah M. "entered it incorrectly both times," and did so intentionally in order to cause the card to be declined. Am. Compl. at ¶ 10. Mr. Newkirk called his bank, which told him that Hannah M. was "entering the key code incorrectly." Am. Compl. at ¶ 12. The reason given for the card being declined was "Merchant Processing Error." Am. Compl. at ¶ 10.

After the second time the debit card was declined, Hannah M. stated that she did not feel comfortable trying again because she was concerned that the card was stolen and Mr. Newkirk was using someone else's card. Am. Compl. at ¶ 12. Mr. Newkirk then informed Hannah M. that he would go withdraw cash to pay for the room. Am. Compl. at ¶ 13. Hannah M. responded that she would charge him an additional $300.00 if he paid in cash. Am. Compl. at ¶ 13. Mr. Newkirk

---

[1] Solely for the purposes of this motion, Defendant accepts the factual allegations of the Amended Complaint as true, but does not admit the truth of any of the allegations thereof.

3

made no inquiries as to the reason for the additional $300.00 charge and went to an ATM and withdrew $800 in cash, then returned to the front desk and presented $600.00 in cash to Hannah M. Am. Compl. at ¶ 14.   According to Mr. Newkirk, when he handed Hannah M. the $600.00, she condescendingly stated she suspected that he stole the cash or that he was carrying counterfeit money and she needed to verify that it was not counterfeit. Am. Compl. at 16. Hannah M. then stated again she would have to charge him an extra $300.00 for paying cash, and suggested that Mr. Newkirk and Ms. Jones may be better off going to a Motel 6.  Am. Compl. at ¶ 17.

During this time, Mr. Newkirk and Ms. Jones witnessed White patrons come up to Hannah M. and other employees behind the desk, inquire about availability, and be given rooms. Am. Compl. at ¶ 19.  The Plaintiffs were so distraught at the way they were treated that they simply gave up and returned home that evening.  Am. Compl. at ¶¶ 19-20.

## STANDARD OF REVIEW

Defendant seeks dismissal of Plaintiffs' Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017). Such a motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law to state a claim upon which relief can be granted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Id.*  A complaint must contain more than "labels and conclusions," or simply "a formulaic recitation of the elements of a cause of action" in order to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

Instead, the facts alleged in a complaint must raise a right to relief above a speculative level and "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). In order to survive a 12(b)(6) motion, a plaintiff must plead more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (quoting *Iqbal,* 556 U.S. at 678)).

Because Plaintiffs' claims in their Amended Complaint do not meet this standard, and instead plead merely that they were harmed by Defendant's poor treatment, Plaintiffs' claims under Section 1981 and Title II must fail. Separately, Plaintiffs' claim under the MCPA must be dismissed because it does not plead any misrepresentation upon which Plaintiffs relied to their detriment. In total, Plaintiffs have failed to state any claim upon which relief can be granted and the Amended Complaint should be dismissed in its entirety.

## ARGUMENT

### I. Ms. Jones Cannot State a Claim Under Count I Because She Did Not Try to Contract Under the Meaning of Section 1981

"Section 1981 establishes that '[a]ll persons ... have the same right ... to make and enforce contracts ... as is enjoyed by white citizens.'" *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006) (quoting 42 U.S.C. § 1981(a)). To succeed on a Section 1981 claim, a plaintiff must "establish both that the defendant intended to discriminate on the basis of race and that the discrimination interfered with a contractual interest." *Id.* at 434. Section 1981 only prohibits *purposeful* discrimination. *Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257 (4th Cir. 2001). A retail customer must allege that he was *actually denied* the ability to make a contract because of race-based animus. *Baltimore-Clark v. Kinko's Inc.*, 270 F. Supp. 2d 695, 699 (D. Md.

5

2003). Finally, a plaintiff must show that the interference with a contractual interest would not have occurred "but for" the plaintiff's race. *Nadendla,* 24 F.4th at 305.

The Amended Complaint fails to plead any facts supporting any contractual interest Ms. Jones had with the Four Seasons. She did not attempt to rent a room; she merely witnessed Mr. Newkirk's attempt to do so. In fact, the hotel receipt attached to the Amended Complaint only lists Mr. Newkirk as an occupant and that only one adult was staying in the room. Because the Amended Complaint does not support the allegation that Ms. Jones attempted in any way to contract with Four Seasons, she should be dismissed as a plaintiff under Count I. *See Baltimore-Clark*, 270 F. Supp. 2d at 699 (only "where a customer has engaged in an actual attempt to contract that was thwarted by the merchant" are courts willing to recognize a Section 1981 claim).

## II. Mr. Newkirk's Section 1981 Claim Should Be Dismissed Because He Has Failed to Allege Sufficient Facts to Establish Discrimination on the Basis of Race

Although Mr. Newkirk did attempt to contract with the Four Seasons, his claim fails because he cannot establish that he was denied a room because of his race. A plaintiff can support a claim under Section 1981 by showing direct evidence of discrimination, or by providing indirect circumstantial evidence sufficient to satisfy the *McDonnell Douglas* burden-shifting framework. In this case, Mr. Newkirk has no direct evidence of discrimination. He alleges no statements directly relating to his race or directly indicating that the reason he was allegedly denied a room was due to his race. *See, e.g., Baylor v. Homefix Custom Remodeling Corp*., 443 F. Supp. 3d 598, 611 (D. Md. 2020) (finding direct evidence of discrimination when employer asked Black employees why they would "send a bunch of Black guys" to canvass a predominately White neighborhood, and instructed Black employees to only recruit in neighborhoods they can "fit in, like strip malls, the black neighborhoods"); *Antonio v. Sec. Services of Am., LLC*, 701 F. Supp. 2d 749, 782 (D. Md. 2010) (derogatory comments about racial minorities, such as "there's too many

n\*\*s" and "Black jokers," sufficient to show direct evidence of discrimination); *Baltimore-Clark*, 270 F. Supp. 2d at 699 (alleged comment that "Black people don't look right on pink paper"); c*f. Murrell,* 262 F.3d at 257 (no evidence of direct discrimination when sole allegation was that a Black family was asked to leave a hotel).

With no direct evidence of discrimination, Mr. Newkirk must rely on the *McDonnell Douglas* burden-shifting framework. Under that framework, a plaintiff must first establish a *prima facie* case of discrimination.[2] A plaintiff makes out a prima facie case of discrimination in hotel accommodations under Section 1981 when he demonstrates that (1) he is a member of a protected class; (2) he sought to enter into a contractual relationship with the defendant; (3) he met the defendant's ordinary requirements to pay for and to receive goods or services ordinarily provided by the defendant to other similarly situated customers; and (4) he was denied the opportunity to contract for goods or services that was otherwise afforded to White customers. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004). Plaintiffs have not plausibly alleged the third or fourth elements in the Amended Complaint.[3]

### a. Mr. Newkirk did not meet the Four Seasons' ordinary requirements to rent a room

Plaintiffs have failed to plead that Mr. Newkirk met the Four Seasons' ordinary requirements to rent a room, because he was unable to present an acceptable form of payment. Mr. Newkirk admits that the debit card he presented was denied on two separate occasions, rendering him unable to pay for the hotel room with that form of payment. While he then presented

---

[2] Although at the pleading stage in a discrimination lawsuit, a plaintiff is not required to plead facts establishing a *prima facie* case of discrimination; on a motion to dismiss the court must consider the elements of a discrimination claim to discern whether the plaintiff has stated a facially plausible claim. *McCleary-Evans v. Md. Dep't of Transp., State Hwy. Admin.*, 780 F.3d 582, 585 (4th Cir. 2015).

[3] Although Defendant maintains that Ms. Jones does not state a claim under Section 1981 because she did not attempt to contract with Four Seasons, if her claim were nevertheless permitted to proceed, her claim would fail for the same reasons Mr. Newkirk's claim fails.

cash for the room, he does not allege Four Seasons denied this form of payment. Rather, he alleges that the Four Seasons imposed an extra charge of $300 for a cash payment, and that Hannah M. stated she needed to ensure the cash was not counterfeit, a reasonable practice for a business, particularly when several hundred dollars were at issue.  Mr. Newkirk then chose to walk away. Because he was unable to present an acceptable form of payment, and then chose to walk away, Mr. Newkirk has not met the third element of a *prima facie* case under Section 1981.

### b. Mr. Newkirk was not denied the opportunity to rent a room afforded to other guests outside of his protected class

Mr. Newkirk similarly cannot demonstrate that he was denied goods or services that were provided to others under similar circumstances.  First, Mr. Newkirk does not allege that the Four Seasons denied him accommodations; rather, he alleges that he was treated badly by the Four Seasons when he tried to rent a room, and was so upset by this treatment, that he left the premises. Second, Mr. Newkirk cannot demonstrate that White patrons were permitted to rent rooms under similar circumstances.

### (i) The Amended Complaint does not establish a denial of service

The allegations of the Amended Complaint fail to show a denial of service as a matter of law.  The facts here are similar to those in *Baltimore-Clark*.  In that case, while the plaintiff was making copies of advertisements in a store, the defendant stated to her, "Black people don't look right on pink paper."  270 F. Supp. 2d at 700.  Despite this statement, the plaintiff did not allege that she was denied service or asked to leave the store.  This Court held that the plaintiff's allegations did not state a claim for race discrimination under Section 1981.  *Id*.  In the instant case, Mr. Newkirk similarly does not allege in his Amended Complaint that he was denied the right to contract for a hotel room. Instead, he states that Hannah M. "suggested that Mr. Newkirk and his girlfriend *might* find more suitable accommodation at a Motel 6" making it clear that

[Plaintiffs] were not welcome at the Four Seasons. This statement does not establish that Plaintiff was denied the right to contract.

The consolidated cases discussed in *Callwood v. Dave & Buster's, Inc.* are instructive to demonstrate the type of conduct that will support a claim of denial of service. The court found the Callwoods had alleged facts to show that the defendant refused to serve them when they alleged that they were ejected and escorted out of the restaurant by security personnel, including off-duty county police officers. 98 F. Supp. 2d 694, 700, 710 (D. Md. 2000). In contrast, the court found that the Gilberts had not shown a denial of service when they alleged that a series of negative interactions with the restaurant led to their voluntary departure. *Id.* at 718. Similarly, in this Amended Complaint Hannah M.'s comment does not amount to an actual denial of service. Mr. Newkirk was not asked to leave the premises, Hannah M. did not refuse to serve or assist them (and in fact, it is alleged that Hannah M. purposefully resumed serving them when they returned with cash, *see* Am. Compl. at ¶ 14), and Mr. Newkirk was not told that he could not rent a room. Being subjected to poor treatment is legally insufficient show a denial of service under Section 1981.

> **(ii) The Amended Complaint does not establish that similarly-situated White patrons were treated differently**

In addition, Mr. Newkirk has not established that the accommodations he sought were made available to similarly-situated guests outside of his protected class. Although Mr. Newkirk alleges that White customers were given rooms and not charged $300 more, these conclusory allegations are unsupported by any specific allegations that would demonstrate that White patrons were given rooms based on similar circumstances. In fact, Plaintiff's Amended Complaint on its face provides three details that would have made his attempt to obtain a room different than most other patrons: first, he was a "walk up" patron who came in without a reservation; second, his

9

debit card was declined two times; third, he sought to pay cash for a room. Plaintiff asserts that race is the only difference between him and the other individuals who were given rooms, but he alleges no facts that the other patrons were similar to him in even one of those circumstances, let alone all three. He states only that he observed several Caucasian patrons inquire about room availability and receive accommodations without any obstacles, which is patently insufficient.

In a similar case, the Fourth Circuit dismissed a plaintiff's Section 1981 claim based on strikingly similar conclusory allegations that the defendant "denied other physicians of Indian descent clinical privileges or had a different peer review process for white physicians." *Nadendla*, 24 F. 4th at 306. In that case, the plaintiff alleged that she was treated differently than White physicians and that there was a double standard of medical peer review whereby minority physicians were scrutinized more harshly than White physicians. However, she did not provide any facts to suggest the treatment of Indian physicians was unjustified. *Id*. at 305. Holding that "a plaintiff must show that the interference with a contractual interest would not have happened but for the plaintiff's race," the Fourth Circuit dismissed the claim because "factual details regarding race were conspicuously absent." *Id.*

Similarly, factual details regarding race are conspicuously absent from Plaintiff's Amended Complaint. The Amended Complaint attempts to cure the initial failure by alleging that White patrons were not charged $300 more for a room. Plaintiffs do not allege, however, any specific facts to support that those patrons were walk-ups without a reservation, that they attempted to pay with a card that was declined, or that they attempted to pay in cash, which was the stated reason Four Seasons gave for the additional charge. All Mr. Newkirk alleges is that while he was at the Four Seasons he witnessed other patrons, who were White, inquire as to availability and be given rooms. Without any specific allegations about the check-in process the alleged other White

10

patrons were engaged in, including whether they had reservations, whether their debit cards were declined, and whether they attempted to pay in cash seeking similar accommodations, it cannot plausibly be inferred that they were given an opportunity to contract for services that was denied to Mr. Newkirk under similar circumstances. *See id.*; *see also Jarvis v. Wells Fargo Bank, N.A.*, No. DLB-21-687, 2022 WL 4234835, at *3 (D. Md. Aug. 26, 2022) (dismissing Section 1981 claim when plaintiffs did not allege that non-Black customers were, like plaintiffs, customers without a Wells Fargo account attempting to cash a check or open a bank account because the court could not "plausibly infer that race—and not some other factor—was the reason plaintiffs were denied services.").

### c. Mr. Newkirk cannot show race was the "but for" reason he was unable to rent a room

Even if this Court were to find that Mr. Newkirk adequately alleged denial of accommodation at the Four Seasons, the Amended Complaint still must be dismissed because it does not allege facts that his race was a "but-for" cause of the denial.

To satisfactorily allege denial of services under Section 1981 and survive a motion to dismiss, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020); *Nadendla*, 24 F.4th at 305; *Baltimore-Clark*, 270 F. Supp. 2d at 699.

In *Nadendla*, the Fourth Circuit held that the plaintiff's complaint fell short of showing causation when she pled, in a conclusory fashion, that "[b]ut for Plaintiff's race, [WakeMed]'s wrongful conduct [that] Plaintiff alleged herein would not have occurred. . . and she suffered numerous harms and damages 'as a direct and proximate result' of the racial discrimination of [WakeMed]." 24 F.4th at 305-06. The Fourth Circuit held that merely reciting the elements of the

11

cause of action, without specific facts to support the elements, is precisely the type of allegation that *Iqbal* and *Twombly* determined is insufficient. *Id.* at 306. The same can be said for Mr. Newkirk's claims.

Mr. Newkirk's allegation of causation is strikingly similar: that "but for [his] race, [he] would have been permitted to purchase a room for the night…at the same price charged to Caucasian patrons…and to enjoy the benefits of the Defendant's hotel and hotelier services." Am. Compl. at ¶ 16. Like the plaintiff in *Nadendla*, Mr. Newkirk has not provided any facts to show that were he not Black, he would have been provided a hotel room. The Amended Complaint does not point to any comments or actions to infer race was the "but for" reason for the service they received. Plaintiffs' allegation that they were racially profiled is supported by nothing more than their own conclusory inference. While Plaintiff's Amended Complaint now alleges that Hannah M. condescendingly and accusatorily stated she suspected the cash Mr. Newkirk presented may have been stolen or counterfeit and this and or her actions may have caused Plaintiff distress, simply alleging unfair or harsh treatment is not enough for an intentional discrimination claim. *See Evans v. Holiday Inns, Inc.*, 951 F. Supp. 85, 88 (D. Md. 1997). Further, all Plaintiff alleges in the Amended Complaint is his own unsubstantiated allegations as to Hannah M.'s motivation, with nothing more than witnessing other White patrons be served to support race was the "but for" for her comments. *See id.* (holding it is not sufficient for plaintiff to just establish that some White guests were also loud and unruly in the motel but were not evicted). Accordingly, Count I of the Amended Complaint should be dismissed with prejudice.

**III.**   **Plaintiffs Cannot Establish a Violation of Their Civil Rights Under Title II**

Plaintiffs' claim under Title II of the Civil Rights Act must be dismissed for similar reasons. Title II provides: 'All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public

accommodation ... without discrimination or segregation on the ground of race [and] color[.]" 42 U.S.C. § 2000a.

Courts generally apply the same framework in analyzing Title II discrimination claims as Section 1981 discrimination claims. *See Callwood*, 98 F. Supp. 2d at 694. Further, when a plaintiff brings both a Section 1981 and Title II claim in the same action, this Court has repeatedly analyzed the Title II claim as a companion claim, dismissing it if the Section 1981 claim has been dismissed. *See, e.g. Sherman v. Marriott Hotel Servs., Inc.*, 317 F. Supp. 2d 609, 616 (D. Md. 2004); *Callwood*, 98 F. Supp. 2d at 721; *Evans*, 951 F. Supp. at 86, 90.

To prevail on a claim under Title II, Plaintiffs must show: (1) Four Seasons affects commerce; (2) Four Seasons is a public accommodation; and (3) Four Seasons denied them full and equal enjoyment of the hotel based on their race. *See Callwood*, 98 F. Supp. 2d at 709. As is true under Section 1981, the final element of this test may be proven either through direct evidence or under the *McDonnell Douglas* burden-shifting standard. *See id*. While Defendant will assume the first two factors to be met for the purposes of this Motion, the Plaintiffs cannot establish the third factor for the same reasons their Section 1981 claim fails.

To demonstrate that a defendant acted because of an individual's race or color, there must be "some connective thread between the alleged mistreatment and the protected status." *Taylor v. MGM Resorts Int'l, LLC*, No. CV DKC 21-3192, 2022 WL 2971955, at *4 (D. Md. July 27, 2022). For the same reasons as discussed above, Mr. Newkirk's and Ms. Jones' Title II claim should be dismissed. Plaintiffs do not allege any direct evidence of race discrimination. Rather, as in other cases where such claims were dismissed as a matter of law, their "principal evidence. . . is their own unsubstantiated allegations as to defendants' motivation," which are insufficient as a matter of law. *See Evans*, 951 F. Supp. at 89 (citing *Ross v. Communications Satellite Corp.*, 759 F.2d

355, 365 (4th Cir. 1985)). Plaintiffs assert that the comments were intentionally intended to make Newkirk and Jones feel that they were not welcome and did not belong at the Four Seasons because they were Black. Am. Compl. at ¶ 19. The Plaintiffs' Amended Complaint, however, "identifies no comparators, no pattern of disparate treatment, and no statement or conduct indicative of racial animus." *Taylor*, 2022 WL 2971955 at *4. The Amended Complaint repeatedly asserts that Hannah M.'s actions constitute racial profiling, despite the absence of any specific statements to suggest that her actions or comments were related to race. As this Court and the Fourth Circuit have noted, however unpleasant the alleged comments may have been, the law does not blindly ascribe race to all personal conflicts between individuals of different races. *Hawkins v. Pepsi Co, Inc.*, 203 F.3d 274, 282 (4th Cir. 2000); *Callwood*, 98 F. Supp. 2d at 718 (dismissing a case finding the plaintiffs' strategy to "identify as many incidents of perceived mistreatment as possible and inject race into the mix" insufficient).

Without more, Plaintiffs have not plausibly alleged race discrimination, and therefore Count II should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

### IV. Plaintiffs Cannot Establish a Claim Under the Maryland Consumer Protection Act

Finally, Plaintiffs' Amended Complaint should be dismissed because they fail to state a claim under the Maryland Consumer Protection Act ("MCPA"). The MCPA prohibits unfair or deceptive trade practices in the sale, lease, rental or loan of consumers' services. *See* Md. Code Ann., Com. Law § 13-301. As an initial matter, the MCPA lists over two dozen statutes that, if violated, automatically violate the Act. *See* CL § 13-301(14)(ii)-(xxvii). Plaintiffs have not alleged a violation of any of those statutes. To state a claim under the MCPA, Plaintiffs therefore must allege: "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and

(3) causes them actual injury." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012). For the following reasons, Plaintiffs cannot establish any of the elements necessary for a MCPA claim.

### a. Plaintiffs do not allege that Four Seasons committed an unfair or deceptive practice

Unfair trade practices are identified as misstatements or misrepresentations made directly to a consumer concerning the quality and availability of services. *See Klein v. State*, 52 Md. App. 640, 644 (1982); *Binks v. Ally Bank*, No. CV SAG-20-496, 2020 WL 5642257, at *3 (D. Md. Sept. 22, 2020). A misrepresentation must be at the heart of the claim; the type of poor customer service alleged in the Amended Complaint does not amount to an unfair or deceptive trade practice necessary for a MCPA claim as a matter of law.

Plaintiffs have listed six ways they believe Four Seasons engaged in unfair or deceptive practices towards them which ultimately can be summarized as stated below:

   i. Intentionally miskeying the credit card number so the payment would be rejected and then misrepresenting the card had been denied;

   ii. Misrepresenting and inflating the price of the room when Mr. Newkirk offered to pay in cash;

   iii. Misrepresenting the amount that Mr. Newkirk would ultimately be charged for;

   iv. Demanding a price that inflated by $300 over the stated room charge;

   v. Denying hotel room even though Mr. Newkirk had the financial means to pay; and

   vi. Steering Plaintiffs to a less luxurious hotel.

*See* Am. Compl. at ¶ 57.

However, none of the alleged unfair or deceptive trade practices allege any misrepresentation concerning the quality and availability of the rooms in the Four Seasons as *Klein* says is needed to succeed on a MCPA claim. The Plaintiffs' attempt to classify the above actions as misstatements or misrepresentations is unfounded. As an initial matter, only the first four allegations relate to actual statements. The first statement was not a misrepresentation or misstatement because the Amended Complaint conclusively establishes that Mr. Newkirk's debit card was in fact declined. *See* Am. Compl. at ¶ 9 & Ex. 3. The allegation that it was declined because Hannah M. intentionally "miskeyed" some unidentified piece of information does not turn the statement into a misrepresentation; the card was undeniably declined. Indeed, the evidence submitted by Plaintiffs demonstrates conclusively that Hannah M. in fact keyed in the correct account number and amount of the transaction, because otherwise the charges would not have been linked to Mr. Newkirk's account. The Amended Complaint fails to explain what this "miskeying" of information actually is and how it amounts to a misrepresentation.

The second, third, and fourth statements, which all concern the price of the room and alleged inflation of the room rate are also not misrepresentations. Hannah M. informed the Plaintiffs that, if they chose to pay cash, they would be charged an additional $300. There is absolutely no allegation in the Amended Complaint that this was not true, or that it was not the actual price the Four Seasons would charge under those circumstances. Plaintiffs now refer to the Four Seasons Terms and Conditions to claim that there are not two different stated prices for paying with card versus cash. However, the Four Seasons Terms and Conditions do state all offers are subject to availability and the time of reservations and rates are subject to change, and further state that the rates do not include "surcharges," which would include the additional charge

associated with paying cash.[4]  *See* **Exhibit A**. Further, the fact that this price may have been "inflated" does not make it a misrepresentation. "High[er] prices do not in and of themselves constitute false representations." *See, e.g.*, *Washington Cnty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*, 431 F. Supp. 3d 698, 712 (D. Md. 2020) (dismissing plaintiffs' MCPA claim that was based on inflated drug prices as the complaint did not allege the prices themselves deceptive).

The remaining two actions alleged to support this claim are not even statements or representations; they are simply actions alleged to have been taken by the Four Seasons. Such allegations do not fit under the traditional context of MCPA. Indeed, no cases could be found to support a claim that actions such as denial of service or steering toward a different product constitute a violation of the MCPA.

Traditionally, MCPA cases involve issues between buyers and sellers, debtors and debt collectors, tenants and landlords, and mortgagors and loan servicers. *See, e.g., Peete-Bey v. Educ. Credit Mgmt. Corp.*, 131 F. Supp. 3d 422, 432 (D. Md. 2015) (debtor alleging debt collector's conduct was "false and deceptive because [it] demanded payments on an invalid debt"); *Legore v. OneWest Bank, FSB*, 898 F. Supp. 2d 912, 919 (D. Md. 2012) (mortgagor alleging loan servicer made several misrepresentations concerning modification of loan); *Sager v. Hous. Comm'n of Anne Arundel Cnty.*, 855 F. Supp. 2d 524, 551 (D. Md. 2012) (tenant brought claim against landlord for a lease provision that is expressly prohibited under the MCPA); *Chambers v. King*

---

[4] Plaintiff expressly references the Four Seasons Terms and Conditions in the Amended Complaint, but chose not to attach them as an exhibit. This Court can take notice of terms without converting this Motion to Dismiss into a Motion for Summary Judgment since they are specifically referenced in the Amended Complaint. *See, e.g., Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (Proper to consider documents outside of the complaint when the claims turn on or are based on statements contained in the documents.); *Dennis v. Bd. of Educ. of Talbot Cty.*, 21 F. Supp. 3d 497, 501 (D. Md. 2014) ("[I]n deciding a motion to dismiss, the Court may rely on documents outside the complaint if they are attached to or referenced in the complaint."). The "Terms and Conditions" associated with a Four Seasons room currently on the hotel's website is attached as **Exhibit A**, accessed on June 19, 2023.

*Buick GMC*, LLC, 43 F. Supp. 3d 575, 621 (D. Md. 2014) (buyer suing seller for misrepresenting the condition, quality, and standard of a car and failing to disclose the price of the car did not match its value).

Plaintiffs' attempt to fit their allegations into the framework of the MCPA is clearly futile.

### b. Plaintiffs cannot establish reliance

Just as Plaintiffs cannot establish any misrepresentation, they similarly cannot establish reliance on any such misrepresentation. Reliance is an essential element of a claim under the MCPA and requires Plaintiffs to plead and prove that the false or misleading statement substantially induced their choice. *Peete-Bey v. Educ. Credit Mgmt. Corp.*, 131 F. Supp. 3d 422, 432 (D. Md. 2015). The showing of reliance is required to demonstrate that a party's injury or loss is the result of a prohibited practice. *Id.*

Nowhere in the Amended Complaint do the Plaintiffs assert that they relied upon any alleged misrepresentation. Indeed, by their own account, they decided to leave and not rent a room at all. They therefore did not rely on the new quoted price or the alleged miskeying of the credit card because they decided not to rent a room. *See id.* (dismissing plaintiff's complaint because she did not allege she acquiesced and paid a debt based on alleged false representation and to the contrary resisted); *Binks*, 2020 WL 5642257 at *3 (MCPA claim dismissed because plaintiff did not take any action in reliance on any representations to conduct further business with the defendant).

### c. Plaintiffs cannot establish actual injury or loss

Finally, Plaintiffs do not allege they suffered any injury due to Four Seasons' allegedly deceptive trade practices. A consumer who is actually injured because of an unfair or deceptive trade practice may bring a civil action against the seller or lessor for his injuries, but the consumer must demonstrate that he is actually injured or sustains an actual loss. *See Citaramanis v.*

18

*Hallowell*, 328 Md. 142, 148-51 (1991). It has been "established that, in order to articulate a cognizable injury under the Consumer Protection Act, the injury must be objectively identifiable. In other words, the consumer must have suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation." *Legore*, 898 F. Supp. 2d at 920 (quoting *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 143 (2007)).

Nowhere in the Amended Complaint do Plaintiffs allege identifiable economic loss directly related to not being able to rent a room at the Four Seasons. For example, they do not allege having to pay more for a room at another hotel than they would have at the Four Seasons. Indeed, the Plaintiffs allege that they simply went home and did not spend any money on a hotel room. *See Chambers*, 43 F. Supp. 3d at 622 (dismissing plaintiffs MCPA claim because she did not allege that she incurred additional repair costs because of the car's prior use); *Cf. Lloyd*, 397 Md. at 149 (holding it was clear that the petitioners alleged facts constituting a loss as a result of the respondents' misrepresentation or omission, measured by the amount it will cost them to repair the defective seatbacks); *Doe v. Gormley*, No. CV ADC-15-2183, 2016 WL 4400301, at *6 (D. Md. Aug. 17, 2016) (plaintiff pled with sufficient particularity that defendant's misrepresentations caused her to suffer injury in the form of paying illegal side-rent to defendant). Plaintiffs' MCPA claim should be dismissed for failure to plead with particularity any economic loss they sustained as a result of not staying at the Four Seasons.

While Maryland law permits recovery of damages for emotional distress, such damages are available only if there was at least a "consequential physical injury," in the sense that "the injury for which recovery is sought is capable of objective determination." *Sager* 855 F. Supp. 2d at 549. Plaintiffs cannot recover for simply being upset or distressed. *Id.* Plaintiffs have still not alleged any specific, objectively manifested physical injury resulting from the alleged deceptive

19

practice in their Amended Complaint. *See*, *e.g., Hoffman v. Stamper*, 385 Md. 1, 34-35 (2005); *Sager*, 855 F. Supp. 2d at 549; *Winner v. Kelco Fed. Credit Union*, No. CV ADC-20-3420, 2021 WL 5882918, at *10 (D. Md. Dec. 9, 2021) (dismissing plaintiffs MCPA claim for failing to allege physical ailments that resulted from their emotional distress).

For all the foregoing reasons, Count III should be dismissed with prejudice.

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, Defendant respectfully requests that this Court dismiss Plaintiffs' Amended Complaint with prejudice and that it grant such other and further relief as may be proper under the circumstances.

Dated: June 20, 2023                                        Respectfully submitted,

*/s/ Kirsten M. Eriksson*
Kirsten M. Eriksson (Federal Bar No. 26884)
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
keriksson@milesstockbridge.com
Telephone: (410) 385-3583
Facsimile: (410) 385-3700

***Counsel for Harbor East Parcel D-Hotel, LLC***