IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTOINE NEWKIRK and<br>TONYA JONES | * | |
| | * | |
| *Plaintiffs*, | | |
| | * | |
| v. | | Civil Action No. RDB-23-1218 |
| | * | |
| HARBOR EAST PARCEL,<br>D-HOTEL, LLC T/A | * | |
| FOUR SEASONS HOTEL<br>BALTIMORE | * | |
| | * | |
| *Defendant*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

This case arises out of an incident that occurred on New Years Eve, December 31, 2019. The Plaintiffs Antoine Newkirk and Tonya Jones ("Plaintiffs") sought to rent a room at the Four Seasons Hotel in Baltimore. In an original Complaint filed in the Circuit Court for Baltimore City exactly three years after the incident, the Plaintiffs brought three counts against Defendant Harbor East Parcel D Hotel, LLC ("Defendant" or "the Hotel"), alleging violations of 42 U.S.C. § 1981 (Count I), Title II of the Civil Rights Act of 1964 (42 U.S.C. § 2000a et seq.) (Count II), and The Maryland Consumer Protection Act (MD. CODE ANN., COM. LAW §§ 13-301 et seq.) (Count III). (ECF No. 5.) On May 9, 2023, this case was removed by the Defendant to this Court based upon the alleged federal violations. On May 16, 2023, Defendant moved to dismiss the original complaint for failure to state a claim.[1] (ECF No. 8.)

---

[1] Defendant's Motion to Dismiss (ECF No. 8), which addressed the original complaint, is DENIED AS MOOT.

On June 6, 2023, Plaintiffs filed an Amended Complaint, including more detailed facts surrounding the incident that gave rise to the three counts. (ECF No. 9.)

Now pending before this Court is Defendant's Motion to Dismiss the Amended Complaint. (ECF No. 10) In its motion, Defendant argues that even with the additional facts provided in the Amended Complaint, Plaintiffs still failed to state a claim for all three counts. (ECF No. 10.) Defendant's Motion to Dismiss the Amended Complaint (ECF No. 10) is now ripe for review. This Court conducted a hearing on February 23, 2024. For the reasons set forth on the record at that hearing and the reasons that follow, Defendant's Motion to Dismiss (ECF No. 10) is **GRANTED** and this case is DISMISSED with PREJUDICE.

## BACKGROUND

This Court accepts as true the facts alleged in the plaintiffs' complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). Plaintiff Antoine Newkirk is an African American male. (ECF No. 9 at ¶ 1.) Plaintiff Tonya Jones is an African American and Hispanic female. (Id. at ¶ 2.) On December 31, 2019, Plaintiffs entered Four Seasons Hotel Baltimore without a reservation and inquired about renting a room for the night. (Id. at ¶ 8.) Four Seasons Hotel Baltimore is the trading name of Defendant Harbor East Parcel D Hotel, LLC. (Id. at 1.) A Four Seasons employee with a nametag reading "Hannah M." ("the employee") quoted Plaintiffs a price of $435 for the room, totaling to $511.13 for the night. (Id. at ¶¶ 8-9.)

The employee attempted to authorize a charge of $600 on a debit card which Mr. Newkirk gave to her, but it was initially denied by the bank. The employee then tried authorizing a new charge for $630, which was denied again. (Id. at ¶ 10.) Plaintiff Antoine Newkirk had $1,011.52 in his bank account at the time his card was presented. (Id. at ¶ 9.) Mr.

Newkirk called his bank to verify the money in his account, and they told him that the employee was "entering the key code incorrectly," and the listed reason for the card being declined was "Merchant Processing Error." (Id. at ¶¶ 10, 12.) The employee then told Plaintiffs she was uncomfortable trying a third time because of concerns that the card was stolen, so Mr. Newkirk left to go get cash to pay for the room. (Id. at ¶¶ 12-13.) The employee informed Plaintiffs prior to leaving there would be a $300 surcharge for cash payments. (Id. at ¶ 13.)

Mr. Newkirk, who says he was determined to give his girlfriend, Plaintiff Tonya Jones, a special evening at the Four Seasons Hotel, arrived back to the hotel having withdrawn $800 cash and presented $600 to the employee. (Id. at ¶ 14.) Plaintiffs allege that when they came back to make the cash payment, the employee made condescending comments including that she thought Mr. Newkirk might have stolen the cash or that it was counterfeit money. (Id. at ¶ 16.) Plaintiffs also allege that the employee mocked them by suggesting they stay at the Motel 6 instead of the Four Seasons. (Id. at ¶ 18.)Throughout this encounter, Plaintiffs allege that they observed many White customers approach the counter, inquire about rooms, and successfully reserve rooms without any obstacles. (Id. at ¶ 19.) Plaintiffs, upset with how they were being treated, ultimately decided not to reserve a room and returned to their home. (ECF No. 10 at 4.)

On December 31, 2022[2], Newkirk and Jones filed this suit against Four Seasons Hotel Baltimore in the Circuit Court for Baltimore City. (ECF No. 5.) In their original Complaint, Plaintiffs brought three claims alleging violations of 42 U.S.C. § 1981 (Count I), Title II of the

---

[2] This filing was exactly three years after the subject incident. At the hearing conducted on February 23, 2024, Counsel for the Plaintiffs acknowledged that this filing came within 24 hours of being barred by the Statute of Limitations.

Civil Rights Act of 1964 (42 U.S.C. § 2000a et seq.) (Count II), and The Maryland Consumer Protection Act (MD. CODE ANN., COMM. LAW §§ 13-301 et seq.) (Count III). (ECF No. 5.) On May 16, 2023, Defendant moved to dismiss the original complaint for failure to state a claim. (ECF No. 8.) On June 6, 2023, Plaintiffs filed an Amended Complaint, including more detailed facts surrounding the incident that gave rise to the three counts. (ECF No. 9.) On June 20, 2023, Defendant filed a Motion to Dismiss the Amended Complaint, arguing that even with the additional facts provided in the Amended Complaint, Plaintiffs still failed to state a claim. (ECF No. 10.) Defendant's Motion to Dismiss the Amended Complaint (ECF No. 10) is now ripe for review.

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P 8(a)(2). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotations omitted).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations."

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim.  *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

## ANALYSIS

### I.   Plaintiffs do not allege sufficient facts to establish discrimination on the basis of race under 42 U.S.C. § 1981.

Section 1981 of Title 42 of the United States Code states:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.

Plaintiffs can use direct evidence of discrimination or can provide indirect circumstantial evidence that sufficiently satisfies the *McDonnell Douglas* burden-shifting framework to support a claim under Section 1981. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The *McDonnell Douglas* framework allows plaintiffs to use circumstantial evidence to establish a prima facie case of discrimination. If they are successful, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. *See id.* The United States Court of Appeals for the Fourth Circuit has held that in order

for a plaintiff to make a prima facie case under Section 1981, he must demonstrate "(1) he is a member of a protected class; (2) he sought to enter into a contractual relationship with the defendant; (3) he met the defendant's ordinary requirements to pay for and to receive goods or services ordinarily provided by the defendant to other similarly situated customers; and (4) he was denied the opportunity to contract for goods or services that was otherwise afforded to White customers." *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

Plaintiffs provide no direct evidence of discrimination. They rely only on their own belief that the statements and actions made by the employee, specifically comments such as her belief "that the card was stolen" and her charging Mr. Newkirk a $300 surcharge for cash payment, were intended to make them feel unwelcome because of their race. However, no evidence exists supporting that they were denied a room solely based on their race. Thus, they must rely on the burden-shifting framework of the *McDonnell Douglas* test.

Plaintiffs fail to satisfy the *McDonnell Douglas* test because they do not establish a prima facie case under Section 1981. They meet the first two elements, as (1) they are members of a protected class who (2) sought to enter into a contractual relationship with the Defendant. However, they do not satisfy the third and fourth elements: (3) that they met Defendant's ordinary requirements to pay for and receive goods or services ordinarily provided by the Defendant to other similarly situated customers; and (4) that they were denied the opportunity to contract for goods or services that was otherwise afforded to White customers. *Id.*

Plaintiffs fail to demonstrate that they met the Defendant's ordinary requirements to pay for a hotel ordinarily provided by the Defendant to other similarly situated customers. Mr. Newkirk's card was declined twice when charged for the room, and then when later attempting

to pay in cash, he became frustrated with the hotel charging him a $300 surcharge as a deposit, so he decided to leave. Plaintiffs argue that nothing in the hotel's policy discusses a $300 surcharge for cash payments, but the hotel's terms and conditions clearly state, "[r]ates are per room . . . and do not include applicable taxes, service charges, levies, resort fees, gratuities or surcharges, unless otherwise noted." (ECF No. 10-2.) Additionally, Plaintiffs argue that similarly situated White customers did not experience the same treatment, but this argument is also without merit because they fail to provide any evidence that any of those customers were similarly situated. Plaintiffs allege that White customers walked up to the hotel and rented rooms without any problems, but there's no evidence that those customers were in the same situation as Plaintiffs, including whether they had a reservation prior to coming to the hotel, if they had any issues with their cards being declined, or if they would have been charged the surcharge fee had they paid in cash. (ECF No. 9 at 3–4.)

Plaintiffs also do not satisfy the fourth element because they fail to demonstrate that they were denied the opportunity to rent a room that was otherwise afforded to White customers. The Amended Complaint fails to demonstrate that Plaintiffs were even denied service. They were not told that they could not rent a room, nor were they asked to leave the hotel. They left the hotel on their own accord after growing frustrated with the employees. Although they may have felt the customer service was poor, they were never denied service or the opportunity to rent a room.

## II.     Plaintiffs fail to establish a violation of their civil rights under Title II.

Title II of the Civil Rights Act states, "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any

place of public accommodation, as defined in this section, without discrimination on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a (2022). Plaintiffs must demonstrate that (1) the Defendant affects public commerce; (2) the Defendant is a public accommodation; and (3) the Defendant denied Plaintiffs full and equal enjoyment of the hotel based on their race. *See Callwood c. Dave & Buster's, Inc.*, 98 F. Supp. 2d 694, 694 (D. Md. 2000). This Court has applied the same framework for analyzing discrimination claims under both Title II and Section 1981, thus typically dismissing the Title II claim if the Section 1981 claim has already been dismissed. *See, e.g.*, *Sherman v. Marriott Hotel Servs., Inc.*, 317 F. Supp. 2d 609, 616 (D. Md. 2004); *Callwood*, 98 F. Supp. 2d at 721.

However, even if the Title II claim is not analyzed and dismissed with the Section 1981 claim, Plaintiffs fail to prove that there was any connection between their alleged mistreatment and their race. As Judge Chasanow of this Court aptly noted, there must be "some connective thread between the alleged mistreatment and the protected status," in order to demonstrate that a defendant acted because of an individual's race or color. *Taylor v. MGM Resorts Int'l, LLC*, No. CV DKC 21-3192, 2022 WL 2971955, at *4 (D. Md. July 27, 2022). Plaintiffs assert that the employee's comments were made to make them feel unwelcome because of their race, but no evidence of this intention is provided, such as statements indicative of racial animus or disparate treatment. Plaintiffs further assert that other similarly situated White customers were treated differently, but this argument is also unavailing as they failed to demonstrate that the other customers were similarly situated. No matter how unpleasant Plaintiffs' experience was, "the law does not blindly ascribe race to all personal conflicts between individuals of different races." *Hawkins v. Pepsi Co, Inc.*, 203 F.3d 274, 282 (4th Cir. 2000).

**III.     Plaintiffs cannot establish a claim under the MCPA.**

As the Plaintiffs have failed to state a federal claim with respect to Counts I and II, this Court may still exercise supplemental jurisdiction for Count III. In general, this Court may exercise jurisdiction over state law "claims that are so related to claims in [an] action within [their] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367. Having disposed of the federal claims which formed the basis of this Court's subject matter jurisdiction, this Court may still exercise supplemental jurisdiction over the pending state law claim. *See* 28 U.S.C. § 1367; *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) ("[A] court has discretion to dismiss or keep a case when it has dismissed all claims over which it has original jurisdiction.") The Court will exercise supplemental jurisdiction with regards to Count III.

The Maryland Consumer Protection Act was "intended to provide minimum standards for the protection of consumers in the State." *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 140, 916 A.2d 257 (2007). To state a claim under the MCPA, Plaintiffs must allege an (1) unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury. *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012). The MCPA prohibits any unfair or deceptive trade practices including any "false, falsely disparaging … representation of any kind which has the capacity, tendency, or effect of deceiving or misleading customers." *See* MD. CODE ANN., COM. LAW § 13-301(1).

Plaintiffs have not demonstrated that the Defendant engaged in an unfair or deceptive practice or misrepresentation. They attempt to argue that representing a price for a room that is inflated and not the true price is an unfair and deceptive trade practice, but that is not the

case. However arbitrary the $300 surcharge for cash payments may be, it is not an unfair and deceptive trade practice, especially when the terms and conditions on the hotel's website state that the rates listed do not include possible fees or surcharges. There is no evidence that the employee presented the surcharge in order to deceive or mislead the Plaintiffs, when in fact it is not unreasonable for a business to charge an additional deposit for cash payments for security purposes.

Even if there was an unfair or deceptive practice or representation, Plaintiffs still failed to demonstrate there was reliance or actual injury, which are essential to an MCPA claim. "To establish reliance under the MCPA, Plaintiffs must plead and prove that the false or misleading statement substantially induced their choice." *Currie v. Wells Fargo Bank*, N.A., 950 F.Supp.2d 788, 798 (D. Md. 2013). "The requirement of reliance flows from the MCPA's prescription that the party's 'injury or loss' be 'the result of' the prohibited practice…" *Bank of Am., N.A. v. Jill P. Mitchell Living Trust*, 822 F.Supp.2d 505, 534 (D. Md. 2011). An injury must be objectively identifiable in order to articulate a cognizable injury under the MCPA. *See Legore v. OneWest Bank, FSB*, 898 F. Supp. 2d 912, 920 (D. Md. 2012). Simply put, Plaintiffs "must have suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation." *Lloyd*, 397 Md. At 143.

Plaintiffs put forth no evidence in their Amended Complaint demonstrating their reliance or actual injury. To the contrary, the fact that plaintiffs decided to leave the hotel on their own and head back to their home for the evening suggests that they did not rely on the hotel and were not injured. Plaintiffs argue they suffered economic loss by commuting to and from the hotel, but that is not an injury that was caused by any action of the hotel. Plaintiffs

came to the hotel at 7 p.m. on New Year's Eve without a reservation. They then decided on their own to leave the hotel, without paying for a room, and after growing frustrated with an employee. They incurred the costs of driving to the hotel on their own, especially since they came without a reservation on a holiday evening. Furthermore, they would have had to leave the hotel to drive home whether they had a room or not. Therefore, Plaintiffs failed to state a claim under the Maryland Consumer Protection Act.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (ECF No. 10) is **GRANTED** and Plaintiffs' First Amended Complaint is DISMISSED with PREJUDICE. Defendant's previously filed Motion to Dismiss (ECF No. 8), which addressed the original Complaint, is **DENIED AS MOOT**.

A separate Order follows.

Dated: March 1, 2024          ___/s/_____

Richard D. Bennett
United States Senior District Judge

11